UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL CASE NO. 15-96-WOB-CJS

DEANA RENEE MONHOLLEN                                                        PLAINTIFF

v.                          **REPORT AND RECOMMENDATION**

CAROLYN W. COLVIN, Acting
**Commissioner of Social Security**                                          DEFENDANT

\* \* \* \* \* \* \* \* \* \* \*

Plaintiff Deana Renee Monhollen brings this action under 42 U.S.C. § 405(g), challenging Defendant Commissioner's final decision denying her application for benefits under Title II of the Social Security Act.[1] (R. 2). This matter has been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and therefore not entitled to benefits. After a thorough review of the administrative record, for the reasons explained below it will be **recommended** that Plaintiff's Motion for Summary Judgment (R. 11) be **denied**, and the Commissioner's Motion for Summary Judgment (R. 12) be **granted.**

I.      STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is

---

[1]In Plaintiff's Motion for Summary Judgment, she argues that she also applied for supplemental security income (SSI) under Title XVI of the Act. (R. 11-1, at 1). However, the Complaint and Administrative Record do not demonstrate that an SSI claim was filed on Plaintiff's behalf. Regardless, the analysis set forth herein also applies to an SSI claim.

supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id*. (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id.* (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that she is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Act requires the Commissioner to follow a five-step analysis when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that she is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)). Second, if the claimant is not engaged in substantial gainful

2

activity, she must demonstrate that she suffers from a severe impairment. *Id*. at 803-04. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Id*. at 804 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. *Id*. (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). Fourth, if the impairment does not meet or equal a listed impairment, the claimant must show her impairment prevents her from doing her past relevant work. *Id*. Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work that exists in the national economy. *Id*. (citing *Abbott*, 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's alleged disability began on May 17, 2012, when she was 44 years old. (Administrative Record (A.R.) 143-47). Plaintiff completed the eleventh grade, and she has previous work experience as a teacher's aide, clerk, fast-food worker and cashier-checker. (*Id.* at 30-31, 41-42). On her application, Plaintiff asserted the following conditions limit her ability to work: fibromyalgia, pancreatitis, diabetes, high blood pressure, thyroid issues, nerve pain in both legs and bleeding ulcers. (*Id.* at 178). Plaintiff testified that she is 5 feet 5 inches tall and weighs 254 pounds. (*Id.* at 31).

Plaintiff also testified that she is married and lives with her spouse and four minor children. (A.R. 34). She also has two adult daughters who frequently help her and another minor child who does not live with her. She explained that her fibromyalgia causes her pain most of the time and the pain generally stays at about a level five out of ten, but sometimes at night her leg and hip pain will get to a level ten. (*Id*. 32). She testified that her medication helps with the symptoms, but she cannot take some of the medications because it causes her stomach problems. She explained that she eases the pain in her legs by taking a hot bath or wrapping her legs in a heated blanket. (*Id*.). She also explained that her ankles swell and she has numbness in her legs from neuropathy. (*Id*. at 37). She testified if she goes for a walk, she cannot walk for more than four or five minutes without resting. She also estimates she can stand for approximately ten minutes and sit for fifteen to twenty minutes before needing to shift positions. (*Id*. at 33). She testified that her arms stay "real weak" and her hands get stiff and swell. She stated that a gallon of milk is the heaviest item she will lift. (*Id*. at 33-34, 38). She also testified that when she was working, she stayed stressed and nervous during the day, which she thinks also caused her trouble with her stomach, including ulcers. (*Id*. at 40).

On June 19, 2012, Plaintiff filed an application for disability insurance benefits. (*Id.* at 11, 141-45). The claim was denied initially and again upon reconsideration. (*Id.* at 91-114). At Plaintiff's request, a hearing was held before Administrative Law Judge (ALJ) James G. Myles on November 20, 2013. (*Id*. at 28-48). Plaintiff appeared and testified at the hearing. (*Id.*). The ALJ also heard testimony from an impartial vocational expert (VE). (*Id.* at 41-45). After receiving testimony and reviewing the record, the ALJ issued a written decision on December 6, 2013, finding Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 11-21).

4

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled. (*Id.* at 15-22). *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment since May 17, 2012–the alleged onset date of her disability.[2] (A.R. 13). At step two, the ALJ determined that Plaintiff had the severe impairments of: "obesity, degenerative disc disease of the lumbar spine, obstructive sleep apnea, restless leg syndrome, cervical radiculopathy, headaches, fibromyalgia, limb pain, leg neuropathy, rheumatoid arthritis, coronary artery gastric ulcer and chronic pancreatitis." (*Id.*). The ALJ found her testimony of depression and anxiety were not severe impairments. (*Id.* at 14).

At step three, the ALJ analyzed Plaintiff's impairments individually and in combination, and found that Plaintiff did not have an impairment that meets or equals the level of severity set forth in any of the Listing of Impairments under the applicable Federal Regulation, and he specifically referenced his consideration of Listings 1.02, 1.04, 3.02, 4.04, 9.00, 11.14, and SSR 02-1p (evaluation of obesity) and SSR 12-02p (evaluation of fibromyalgia). (*Id.*). At step four, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform work at the medium level, except that she is limited to:

> standing or walking for no more than one hour at a time, and then she must be given an opportunity to sit and rest for two minutes or provided an option to work seated; the claimant can operate foot controls frequently, but she must not climb ladders, ropes or scaffolds, however she may frequently perform other postural activities; additionally, the claimant may occasionally perform overhead reaching, and can perform frequent, but not continuous, handling/fingering with her left non-dominant upper extremity; further, the claimant should have no rapid head cycling, no concentrated exposure to hazards, no loud noises and/or bright/flashing lights; finally the claimant is limited to routine and unskilled work.

---

[2] The ALJ found Plaintiff met the insured status requirements of the Social Security Act through March 31, 2016. (A.R. at 13).

(*Id.* at 14-15).

In reaching this RFC, the ALJ considered claimant's testimony, the documentary evidence before him, and the medical opinion evidence. (*Id.*). After consideration of the complete record, the ALJ imposed limitations in the RFC that he found supported by the evidence. (*Id.*).

At the hearing, the ALJ heard testimony from an impartial VE who stated that, based on the RFC provided by the ALJ, Plaintiff could not perform her past relevant work. (*Id.* at 18). The VE testified, however, that given an individual of Plaintiff's age, education, work experience, and RFC cited above, there are jobs that exist in significant numbers in the national economy that such an individual can perform. (*Id.*). The VE testified that such representative occupations include: bench assembler, inspector, and hand packager; all at the light exertional level with a sit/stand option. (*Id.* at 43). The ALJ adopted the VE's opinions, and concluded that Plaintiff was not "disabled" for social security purposes. (*Id.* at 20-21).

On January 14, 2014, Plaintiff appealed the ALJ's decision to the Social Security Appeals Council, and submitted a November 6, 2013, medical note from Dr. Chumley of St. Joseph Neurology Associates, and an October 24, 2012, third-party questionnaire answered by John Siler. (A.R. 1-7). On April 7, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's December 6, 2013, decision denying Plaintiff benefits the final decision of the Commissioner. (*Id.* at 1-5). On June 5, 2015, having exhausted her administrative remedies, Plaintiff timely filed a Complaint asserting that the ALJ's decision was not in accordance with the law and was contrary to the evidence. (R. 2).

Plaintiff has filed a Motion for Summary Judgment, arguing that the ALJ erred by: failing to consider a November 2013 treatment note of Dr. Chumley, which she noted was not contained

in the List of Exhibits appended to the ALJ's decision (A.R. at 22-25) despite her submission of the record before the hearing; failing to consider a third-party employment questionnaire from a former supervisor; and in finding Plaintiff can perform the representative jobs to which the VE testified. (R. 11). Each of these arguments is discussed below.

### III.  ANALYSIS

#### A.  Commissioner's failure to provide Dr. Chumley's November 2013 treatment note to the ALJ does not require remand

Plaintiff argues that remand is required because the Commissioner failed to include a pertinent piece of medical evidence in the record before the ALJ despite Plaintiff having timely submitted it. (R. 11-1, at 10-12). The record at issue is a November 6, 2013, treatment note from Plaintiff's treating provider Dr. Chumley, who treated Plaintiff for fibromyalgia and chronic headaches. Plaintiff argues that because the ALJ did not have this record before him at the time he rendered his decision, the matter must be remanded for the ALJ to conduct a review of her complete medical records.

In support of her argument, Plaintiff cites to only the agency's Hearings, Appeals, and Litigation Law Manual (HALLEX), citing "I-3-9-4-E" and "I-3-9-4C." As the Commissioner noted, these sections do not exist. It appears Plaintiff intended to cite to HALLEX I-3-9-40E and C, which discuss when the Appeals Council may reopen a determination or decision for good cause. Of relevance here, HALLEX I-3-9-40E provides that the Appeals Council can reopen a determination for good cause where a claimant submits a medical report to the Commissioner "that would have resulted in a different conclusion," but the medical report was not associated with the claim file until after the determination or decision became final. Plaintiff argues this scenario applies and requires remand.

At the hearing, counsel for Plaintiff explained to the ALJ that it did not appear that Dr. Chumley's November 13, 2013, treatment note was in the file despite having been twice submitted. (A.R. at 46-47). She explained the document's relevance by stating it is "a good summary as far as her conditions . . . as far as fibromyalgia, the migraines, and the radiculopathy from her cervical spine, he notes that they are still worsening beside each of those conditions." (*Id*.). She also noted that Dr. Chumley mentioned in the November 2013 note that he is increasing Plaintiff's medication. (*Id*. at 47). The ALJ told Plaintiff and her counsel that he would keep the record open until he saw the document had been received, and he would have an assistant contact counsel if for some reason it was not added to the file in the near future. (*Id*.). It appears, however, that the ALJ rendered his decision without having received the document, as it is not referenced on the List of Exhibits attached to his decision. (*Id*. at 22-25).

Yet, as the Commissioner notes, Plaintiff has not established that the November 6, 2013, treatment note would have resulted in a different conclusion had it been available to the ALJ or that its absence in the record otherwise prejudiced Plaintiff. The ALJ's decision discusses Dr. Chumley's treatment of Plaintiff as conservative and providing little evidence to show that her fibromyalgia and chronic headaches would prevent her from working. (A.R. at 17). A review of Dr. Chumley's medical notes revealed that his August 9, 2013, note was significantly similar to the missing November 6, 2013, note. Notably, the August 9, 2013, note also mentions Plaintiff's fibromyalgia and migraines were worsening, that she had left C8 radiculopathy, and that he was increasing the dose of her medication. (*Compare* A.R. 585-88 *with* 538-42). In fact, her physical examinations on both dates were virtually identical but for a decreased sensation to pinprick in the distribution of the right lateral femoral cutaneous nerve distribution on November 6, 2013. Otherwise, on both dates

8

Plaintiff was found to be mentally alert, cooperative, not in acute distress, with normal motor tone, reflexes 2+ throughout, and 5/5 strength in all extremities. The November 2013 note also mentioned that Plaintiff was having good compliance and tolerance of treatment and fair symptom control, which supports, not diminishes, the ALJ's findings. (A.R. at 585).

Plaintiff has not pointed this Court to any specific aspect of the November 6, 2013, treatment note that she believes would have caused the ALJ to alter his findings. (R. 11-1, at 10-12). Nor has she pointed to any aspect of that note that was not otherwise before the ALJ by way of another medical record. In fact, Plaintiff has not explained how the absence of this record caused her prejudice, but simply points to its absence as requiring remand. Even assuming an error occurred, a remand is not appropriate absent a showing of prejudice. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (A party challenging an administrative decision cannot obtain remand without bearing his burden of establishing that any error was prejudicial); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006). Accordingly, as Plaintiff has not demonstrated prejudice, any error in this regard does not require remand.

### B. The ALJ did not err in finding jobs existed in significant numbers in the national economy that Plaintiff can perform with the stated RFC

Plaintiff argues that the ALJ erred in finding that she could perform jobs that exist in significant numbers in the national economy because he incorporated a sit/stand option and limitation in overhead reaching in the RFC that would preclude the jobs identified by the VE. In making this argument, Plaintiff does not challenge the RFC determination itself, but argues two points: 1) the Dictionary of Occupational Titles (DOT) does not provide for a sit/stand option and thus the ALJ's finding that Plaintiff can do medium work with a sit/stand option is not consistent with the DOT; and 2) the ALJ imposed a limitation for only occasional overhead reaching and the

9

jobs identified by the VE require frequent reaching. Thus, Plaintiff argues the ALJ's reliance on the VE's testimony was error because the jobs identified by the VE are not consistent with the stated RFC.

First, with respect to the sit and stand option, Social Security Ruling (SSR) 00-4p informs how the ALJ is to resolve conflicts between the VE's testimony and the DOT. Specifically, SSR 00-4p provides: "When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p. "It is permissible for a VE to rely on her own experience and testify in a manner that conflicts with the DOT." *Laslau, v. Comm'r of Soc. Sec.*, No. 12-cv-10082, 2013 WL 1632535, at *2 (E.D. Mich. Apr. 16, 2013) (citing *Dantzer v. Comm'r of Soc. Sec.*, No. 3:09-cv-2198, 2011 WL 1113446 at *4 (N.D. Ohio March 24, 2011) ("The VE was permitted to rely upon her own experience, even if it in some way conflicted with the DOT.")); *see also Bennett v. Astrue*, No. 5:07-cv-38, 2008 WL 345523, at *6 (W.D. Ky. Feb. 7, 2008).

Here, the ALJ acknowledged that the sit and stand option was not contained in the DOT. (A.R. at 44). In addition, Plaintiff's counsel specifically asked the VE the basis for his testimony that jobs existed with a sit and stand option:

> Q. the sit/stand option, of course, is not in the DOT. What do you base your findings on the sit/stand option in these positions?
>
> A. The [inaudible] of the job economy on the reduction of jobs in the employment market that have both sitting and standing as an option in those jobs and the published documents on this for employment statistics - - Occupational Employment Statistics, Bureau of Labor Statistics, [inaudible] business patterns, and national census data, and my experience as a vocational rehabilitation counselor over the last 35 years.

(A.R. 44-45). The ALJ explained that he found the VE's significant professional experience to be a sufficient basis to support his opinion that jobs exist in significant numbers that a person with Plaintiff's stated RFC, including the sit and stand option, can perform, stating:

> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles, with the exception of the vocational expert's testimony regarding the claimant's sit/stand option which is based on the vocational expert's occupational analysis of jobs in an open labor market and his professional experience.

(A.R. 20). Accordingly, the ALJ accepted the VE's testimony based on his vast experience as a reasonable explanation for the conflict. Thus, the ALJ complied with SSR 00-4p and did not err in relying on the VE's testimony. (*Id.*).

In addition, Plaintiff's argument that the jobs identified by the VE and adopted by the ALJ are precluded by the ALJ's limitation of only occasional overhead reaching lacks merit. The Plaintiff does not point the Court to any authority that supports her argument that the representative jobs identified—bench assembler, inspector, or hand packager—require more than occasional overhead reaching. Instead, she argues that these jobs require frequent reaching, and seems to conflate the limitation of overhead reaching with a limitation on all reaching. The ALJ, however, only limited Plaintiff's overhead reaching. (A.R. 14).

To the extent Plaintiff may be arguing that the ALJ erred in finding Plaintiff could perform medium work except that she could only occasionally perform overhead reaching, while the VE opined she was limited to light and sedentary work, her argument lacks merit. The ALJ did not find Plaintiff had the RFC for all medium work. Instead, he found Plaintiff:

> has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) except she is limited to standing or walking for no more than one hour at a time, and then she must be given an opportunity to sit and rest for two minutes or provided an option to work seated; the claimant can operate foot controls

11

> frequently, but she must not climb ladders, ropes or scaffolds, however she may frequently perform other postural activities; additionally, the claimant may occasionally perform overhead reaching, and can perform frequent, but not continuous, handling/fingering with her left non-dominant upper extremity; further, the claimant should have no rapid head cycling, no concentrated exposure to hazards, no loud noises and/or bright/flashing lights; finally the claimant is limited to routine and unskilled work.

(A.R. 14-15). This RFC by its own terms limits Plaintiff from a full range of medium work. The fact the VE found the RFC limited Plaintiff to jobs that are performed at the light or sedentary work level does not render the ALJ's RFC error. Instead, he properly relied on the VE's opinion of what jobs Plaintiff is able to perform based upon the stated RFC.

It is well established that substantial evidence may be produced through reliance on the testimony of a VE in response to a hypothetical question that accurately portrays a plaintiff's impairments. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). "[T]he ALJ is only required to incorporate into the hypothetical questions those limitations that have [properly] been accepted as credible." *McIlroy v. Comm'r of Soc. Sec.*, 42 F. App'x 738, 739 (6th Cir. 2002). Plaintiff does not present a specific challenge to the hypothetical question itself as being an inaccurate reflection of Plaintiff's abilities, and the Court's review of the record demonstrates that the ALJ incorporated into the hypothetical those limitations he found credible. Thus, the ALJ reasonably relied on the VE's testimony to find that Plaintiff could perform work existing in significant numbers in the national economy. *See Varley*, 820 F.2d at 779 (ALJ may rely upon VE testimony as substantial evidence). Thus, substantial evidence exists in the record to support the ALJ's decision that Plaintiff is not disabled. *Id.*

### C. The ALJ did not err in not discussing the third-party questionnaire of Plaintiff's former supervisor

Plaintiff also argues that the ALJ erred in failing to discuss or give any weight to Mr. Siler's responses to an employment questionnaire. (R. 11-1, at 13-14). Plaintiff explains that Mr. Siler was her former supervisor and he stated in a response to a question on the questionnaire that she was frequently absent from work due to her health issues, which rendered her work unsatisfactory. (A.R. 218-19). Plaintiff argues this information should have been given substantial weight and consideration by the ALJ in determining an appropriate RFC. Plaintiff contends that the ALJ's failure to consider and give appropriate weight to this evidence requires the ALJ's decision be overturned.

While the Commissioner argues Mr. Siler's response to the questionnaire was first submitted to the Appeals Council, it does appear in the Exhibit List appended to the ALJ's decision and is found in the record before the ALJ. (A.R. 23, 218-19). Thus, the Commissioner's argument that this Court cannot consider this evidence for purposes of its substantial evidence review lacks merit.

Turning to the substantive evidence review, third-party statements fall within SSR 06–3p. This regulation provides that when considering evidence from non-medical sources who have not seen the claimant in a professional capacity, the ALJ should "consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06–3p. There is no requirement, however, that the ALJ discuss the opinions in great detail or offer good reasons for rejecting them.

Here, while the ALJ did not specifically discuss this piece of evidence, as a court in this district recently explained, "where an ALJ discusses at length the objective medical evidence, he is not required to include a separate review of a third party statement." *See Dixon v. Colvin*, No. 7:15-

11-DCR, 2015 WL 5722794, *7 (E.D. Ky. Sept. 29, 2015) (citing *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 842 (6th Cir. 2005) (finding that the ALJ did not commit reversible error by failing to specifically mention a letter from claimant's mother); *see also Cadle v. Astrue*, No. 5:10-CV-190, 2011 WL 3289787, at *4 (N.D. Ohio July 29, 2011) (while an ALJ should directly address third-party questionnaires, failure to do so does not require remand). The ALJ provided a detailed account of the objective medical evidence and his consideration of the third-party statements of Plaintiff's mother as well his analysis of Plaintiff's credibility. (A.R. at 15-19). Mr. Siler's answers to the employment questionnaire are substantially similar to Plaintiff's testimony that she missed a lot of work because of the pain in her legs and stomach. (A.R. 35-36, 218-19). Thus, this evidence was cumulative of Plaintiff's own testimony, which the ALJ did not find fully credible.

Further, as the Commissioner noted, Mr. Siler's statements relate to Plaintiff's inability to satisfactorily perform the functions of her job as a teacher's aide, which the ALJ found she could no longer perform. (A.R. 19). The ALJ considered the record as a whole, including Plaintiff's own statement that she missed a lot of work due to her pain and stomach issues, and found that she had the RFC to perform other work that exists in significant numbers in the national economy. Any failure of the ALJ to consider Mr. Siler's statements, which are cumulative of Plaintiff's own testimony, does not require remand as there has been no showing of prejudice.

**IV.    CONCLUSION AND RECOMMENDATION**

As explained above, Plaintiff's arguments lack merit and the ALJ's decision is supported by substantial evidence. Accordingly, **IT IS RECOMMENDED** that:

1.   The Commissioner's decision be found to be supported by substantial evidence and therefore **affirmed**;

    2.       Plaintiff's Motion for Summary Judgment (R. 11) be **denied**;

    3.       Defendant's Motion for Summary Judgment (R. 12) be **granted**; and,

    4.       Judgment be entered and this matter be **stricken** from the active docket of the Court.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

Dated this 22nd day of February, 2016.

Signed By:
*Candace J. Smith*
United States Magistrate Judge

J:\DATA\social security\15-96-Monhollen R&R final.wpd